UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| CYNTHIA A. PYLE,           ) | |
|                            ) | |
|     Plaintiff,          ) | Case  No. SACV 12-2058 AJW |
|                            ) | |
|     v.                  ) | MEMORANDUM OF DECISION |
|                            ) | |
| CAROLYN W. COLVIN,          ) | |
| Acting Commissioner of Social Security, ) | |
|                            ) | |
|     Defendant.           ) | |
|                            ) | |

Plaintiff filed this action seeking reversal of the decision of defendant, the Acting Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's application for disability insurance benefits.  The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

**Administrative Proceedings**

The procedural facts are summarized in the joint stipulation. [JS 2-3]. Plaintiff filed an application for disability insurance benefits on September 21, 2009 alleging that she had been disabled since November 15, 2007 due to complex regional pain syndrome that originated in her upper extremities and eventually involved her entire body; depression; fatigue; and bilateral carpal, radial, and cubital tunnel syndrome, status post-surgery. [JS 2; Administrative Record ("AR") 29-37, 163].  In a  written hearing decision that constitutes the Commissioner's final decision in this matter, an administrative law judge ("ALJ") concluded that plaintiff was not disabled because she retained the residual functional capacity to perform her past

1 relevant work as a general office worker and receptionist. [AR 36-37].

## Standard of Review

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or is based on legal error. Stout v. Comm'r, Social Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (internal quotation marks omitted). The court is required to review the record as a whole and to consider evidence detracting from the decision as well as evidence supporting the decision. Robbins v. Social Sec. Admin, 466 F.3d 880, 882 (9th Cir. 2006); Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954 (citing Morgan v. Comm'r of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)).

## Discussion

**Medical opinion evidence**

### Treating physician's opinion

Plaintiff contends that the ALJ erred in rejecting the opinion of her treating physician, John Dimowo, M.D., in favor of the opinion of the nonexamining medical expert, Steven Gerber, M.D. [JS 4-24].

The ALJ found that plaintiff, then 45 years old, had severe impairments consisting of complex regional pain syndrome ("CRPS"); bilateral carpal tunnel release, radial release, and cubital tunnel release surgeries; and degenerative disc disease of the lumbar spine. [AR 31]. Based on his evaluation of the medical evidence and plaintiff's subjective symptoms, the ALJ determined that plaintiff retained the RFC to perform light work that did not require constant, repetitive manipulative tasks bilaterally. [AR 32-36].

CRPS, also known as Reflex Sympathetic Dystrophy Syndrome ("RSDS" or "RSD"), refers to "a unique clinical syndrome" that may develop following even a minor injury to bone or soft tissue, most often following trauma to a single extremity. It may also be precipitated by surgical procedures, drug exposure, stroke with hemiplegia, and cervical spondylosis. Social Security Ruling ("SSR") 03-02p, 2003 WL

22399117, at *1.

Many individuals with CRPS are between 18 and 49 years old. SSR 03-02p, 2003 WL 22399117, at *8. The "most common acute clinical manifestations" of CRPS

> include complaints of intense pain and findings indicative of autonomic dysfunction at the site of the precipitating trauma. Later, spontaneously occurring pain may be associated with abnormalities in the affected region involving the skin, subcutaneous tissue, and bone. It is characteristic of this syndrome that the degree of pain reported is out of proportion to the severity of the injury sustained by the individual.

SSR 03-02p, 2003 WL 22399117, at *1. When left untreated or when treatment is delayed, the signs and symptoms of the disorder may worsen over time, and may spread to involve an entire limb or remote parts of the body. SSR 03-02p, 2003 WL 22399117, at *1, *2.

The Commissioner has promulgated policy guidelines for developing and evaluating CRPS claims. CRPS can be established by the persistence of pain complaints "that are typically out of proportion to the severity of any documented precipitant and one or more of the following clinically documented signs in the affected region at any time following the documented precipitant": swelling; autonomic instability (including changes in skin color, texture, or temperature; change in degree of sweating; and abnormal pilomotor erection (goosebumps)); abnormal hair or nail growth; osteoporosis; or involuntary movements of the affected region of the initial injury. SSR 03-02p, 2003 WL 22399117, at *4.

"[L]ongitudinal clinical records reflecting ongoing evaluation and treatment . . . *especially [from] treating sources* are extremely helpful" in evaluating a disability claim based on CRPS, and if the evidence of record is inadequate, the adjudicator "must *first* recontact the [claimant's] treating or other medical source(s)," and "[o]nly *after*" determining that the needed information or clarification cannot readily be obtained from the claimant's health care providers should the adjudicator order one or more consultative examinations. SSR 03-02p, 2003 WL 22399117, at *4 (italics added).

The signs and symptoms of CRPS "may remain stable over time, improve, or worsen." SSR 03-02p, 2003 WL 22399117, at *5. "[C]onflicting evidence in the medical record is not unusual in cases of RSDS due to the transitory nature of its objective findings and the complicated diagnostic process involved. Clarification of any such conflicts in the medical evidence should be sought *first* from the individual's

treating or other medical sources." SSR 03-02p, 2003 WL 22399117, at *5. Furthermore, because chronic pain is an "expected symptom" of CRPS, "careful consideration" must be given evaluation of the credibility of the claimant's pain. SSR 03-02p, 2003 WL 22399117, at *6-*7. A mental evaluation may shed light on whether "any undiagnosed psychiatric disease is present that could potentially contribute to a reduced pain tolerance," but "such evaluations are not based on concern that RSDS/CRPS findings are imaginary or etiologically linked to psychiatric disease." SSR 03-02p, 2003 WL 22399117, at *3. Additionally, in cases involving CRPS, "third-party information, including evidence from medical practitioners who have provided services to the individual, and who may or may not be 'acceptable medical sources,' is often critical in deciding the individual's credibility." SSR 03-02p, 2003 WL 22399117, at *7.

The ALJ noted that beginning in December 2007, shortly after her alleged onset date, plaintiff underwent a total of six surgeries on her upper extremities. [AR 33]. The last surgery was performed in October 2008. Post-operatively, she was prescribed medication and physical therapy two or three times a week for periods of several weeks. [AR 284-476]. Plaintiff's surgeon, Dr. Mark Montgomery, saw her for a follow-up visit on December 16, 2008, after the last of those surgeries, a left cubital tunnel release. Plaintiff reported that her pain and numbness were improving with physical therapy, and she had full mobility in the affected extremity. Dr. Montgomery prescribed six more weeks of physical therapy and instructed her to return in six weeks. [AR 385].

Between February 2009 and June 2009, plaintiff began treatment with Andre Chaves, M.D., a hand surgeon to whom she was referred by her workers' compensation attorney, for complaints of persistent pain bilaterally in her upper extremities. Plaintiff reported that she experienced significant temporary improvement after her bilateral carpal tunnel release surgeries but slight or no benefit from her bilateral radial tunnel release and ulnar nerve transposition surgeries. She complained of radiating pain and numbness in her hands, fingers, wrists, forearms, and elbows, as well as weakness in her hands and arms. Dr. Chaves opined that plaintiff was precluded from activities that require keyboarding more than 45 minutes per hour and from speaking on the phone for long periods of time, and that she should avoid repetitive elbow motion and acute flexion of the elbow for long periods. [AR 475]. He concluded that

plaintiff was temporarily totally disabled.[1] Dr. Chaves also requested, but apparently did not receive, authorization from the workers' compensation carrier to perform a more extensive release of the right radial nerve. [See AR 449-476].

In May 2009 Mark Brown, M.D. examined plaintiff in the capacity of a qualified medical examiner in plaintiff's workers' compensation case. In addition to examining plaintiff, he conducted a detailed review of her medical records. He agreed with Dr. Chaves that plaintiff required further surgery for her hand, wrist, and arm pain and related symptoms. He also recommended a cortisone and xylocaine injection. Dr. Brown opined that plaintiff remained temporarily totally disabled. [AR 412-448].

Plaintiff underwent a consultative orthopedic examination with Carlos Gonzalez, M.D., on November 21, 2009. [AR478-482]. Dr. Gonzalez noted that plaintiff's complex regional pain specialist "feels that multiple surgeries to her upper extremities have triggered [CRPS] throughout her body." Plaintiff reported that she received monthly nerve block injections and took medication for pain. [AR 478]. Plaintiff said that she was taking Cymbalta, Aciphex, methadone, Claritin, gabapentin, Vicodin ES, Valtrex, and Ambien. [AR 479].

Dr. Gonzalez gave plaintiff a "working diagnosis" of CRPS "per her pain management specialist." [AR 481]. He noted that plaintiff's orthopedic and neurologic examination were within normal limits, but that she "will require further evaluation for her [CRPS]." [AR 481]. Dr. Gonzalez opined that plaintiff could perform medium work with frequent fine and gross manipulation. [AR 481].

From June 2009 through the date of the hearing in April 2011, plaintiff received treatment from John Dimowo, M.D., who is both a board-certified anesthesiologist and a board-certified pain medicine specialist.

---

[1] Under California law, "the term 'temporarily totally disabled' means that an individual is 'totally incapacitated' and 'unable to earn any income during the period when he is recovering from the effects of the injury.'" Iatridis v. Astrue, 501 F.Supp.2d 1267, 1277 (C.D. Cal. 2007) (quoting Booth v. Barnhart, 181 F.Supp.2d 1099, 1103 n.2 (C.D. Cal. 2002); Rissetto v. Plumbers & Steamfitters Local 343, 94 F.3d 597, 600, 605 (9th Cir.1996); Herrera v. Workmen's Comp. Appeals Bd., 71 Cal.2d 254, 257 (1969)); see also Robinson v. Workers' Comp. Appeals Bd., 194 Cal.App.3d 784, 792, 239 Cal.Rptr. 841 (1987) ("The period of temporary total disability is that period when the employee is totally incapacitated for work and during which he may reasonably be expected to be cured or materially improved with proper medical attention[,] or until his condition becomes permanent and stationary.") (internal quotation marks and citations omitted).

Dr. Dimowo gave plaintiff diagnoses of reflex sympathetic dystrophy of the upper limb, lumbago, displacement of the lumbar intervertebral disc without myelopathy, lumbosacral spondylosis without myelopathy, and degeneration of lumbar or lumbosacral intervertebral disc. Dr. Dimowo prescribed a variety of medications for pain (methadone, gabapentin, and Vicodin ES, along with Ambien as a sleep aid), and he administered stellate ganglion blocks and lumbar epidural injections every two weeks or so. [AR 79-80, 172-173, 260-261, 543-630, 706-797].

In November 2010, Dr. Dimowo completed written assessment forms regarding plaintiff's impairments. Among other things, he indicated that plaintiff had persistent complaints of pain that were out of proportion to the severity of any documented precipitant, and she had exhibited clinically documented signs, including swelling, decreased or increased sweating, abnormal hair growth, changes in skin color or texture, skin temperature changes, abnormal pilomotor erection, and involuntary movements of the affected region. He said that plaintiff's impairments had lasted or could be expected to last at least twelve months. He noted that plaintiff exhibited symptoms that included burning, aching or searing pain, increased sensitivity to pain, joint stiffness, abnormal sensation of heat and cold, impaired sleep, and chronic fatigue. Dr. Dimowo also indicated that plaintiff had mental functional limitations, including cognitive limitations, impaired attention and concentration, depression, anxiety, and social withdrawal. He opined that plaintiff had limitations in sitting, standing, walking, lifting and carrying that restricted her less than a full range of sedentary work, required the ability to shift positions at will, had significant fine and gross manipulative limitations, would need to take unscheduled breaks during the work day, and was likely to miss more than four days of work a month. Dr. Dimowo also concluded that plaintiff's physical and emotional impairments were reasonably consistent with the symptoms and functional limitations he described. He opined that the earliest date the symptoms and limitations he described on that form applied was November 15, 2007. [AR 639-644].

On March 10, 2011, about a month before the hearing, Dr. Dimowo completed a detailed narrative summary of plaintiff's clinical presentation, diagnoses, treatment, and response to treatment since June 2009. He reiterated all of the functional limitations described in his earlier assessment. He concluded by saying that in his opinion, plaintiff would find it "difficult if not impossible" to "perform any reasonable

work or attain employment." [AR 790-792].

Plaintiff's medical records indicate that from August 2007 until at least March 2011, plaintiff saw Robert Warwar, M.D. as her primary care physician for annual physical examinations, medication monitoring, and for treatment of a variety of ailments, including depression and gastroesophageal reflex disorder. [AR 169-173, 260-261, 645-705]. Dr. Warwar's progress notes include diagnoses of RSD and "complex pain disorder." [E.g., AR 647-648, 655, 686].

During the hearing, the ALJ elicited testimony from a medical expert, Dr. Gerber, who opined that plaintiff had medically determinable impairments consisting of a history of bilateral carpal tunnel syndrome and radial tunnel syndrome, post-surgery; a history of cubital tunnel release surgery; mild degenerative disc disease of the lumbar spine; and "non-physical" issues that were outside his area of expertise. [AR 65]. Dr. Gerber testified that plaintiff's impairments did not meet or equal a listed impairment, and that she was not precluded from light work that did not require constant repetitive manipulative tasks using both hands. [AR 66]. In response to questions posed by plaintiff's representative, Dr. Gerber acknowledged that a treating physician "oftentimes" was in a better position, or in the best position, to assess an individual's functional limitations, but that he could not say whether that was true in this case. Asked whether plaintiff would miss work as a result of her impairments or treatment, Dr. Gerber said that it "was not clear to me from the file," and that he found "no physical basis" in the file for the degree of symptoms plaintiff reported or for Dr. Dimowo's opinion that plaintiff would miss more than four days of work a month. [AR 66-67].

The ALJ gave the opinion of Dr. Dimowo "minimal weight" because: (1) it was unclear how he concluded that plaintiff's impairments existed almost two years before her first visit with him; (2) the restrictions he described conflicted with normal clinical or objective findings in his or other physicians' examination reports; and (3) there were inconsistencies between his opinion and his treatment notes or other evidence in the record. [AR 35]. The ALJ said that he gave "greatest weight" to Dr. Gerber's opinion because "it had the benefit of a longitudinal perspective and review of the evidence" and was "well supported by the medical evidence, the nature of the claimant's impairments and treatment, and the objective clinical signs and findings." [AR 36].

In general, "[t]he opinions of treating doctors should be given more weight than the opinions of

doctors who do not treat the claimant." Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) (citing Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998)); see Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001). An examining physician's opinion, in turn, generally is afforded more weight than a non-examining physician's opinion. Orn,495 F.3d at 631; Lester v. Chater, 81 F.3d 821, 830-831 (9th Cir. 1995).

When a treating physician's medical opinion as to the nature and severity of an individual's impairment is well-supported and not inconsistent with other substantial evidence in the record, that opinion must be given controlling weight. Orn, 495 F.3d at 631-632; Edlund v. Massanari, 253 F.3d 1152, 1157 (9th Cir. 2001); SSR 96-2p, 1996 WL 374188, at *1-*2. The ALJ must provide clear and convincing reasons, supported by substantial evidence in the record, for rejecting an uncontroverted treating source opinion. If contradicted by that of another doctor, a treating or examining source opinion may be rejected for specific and legitimate reasons that are based on substantial evidence in the record. Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); Tonapetyan, 242 F.3d at 1148-1149; Lester v. Chater, 81 F.3d 821, 830-831 (9th Cir. 1995).

The opinion of a non-examining physician normally is entitled to less deference than that of an examining and treating physician precisely because does not have the opportunity to conduct an independent examination and does not have a treatment relationship with the claimant. See Andrews v. Shalala, 53 F.3d 1035, 1040-1041 (9th Cir. 1995) (explaining that more weight is given to the opinions of treating and examining physicians because they have a greater opportunity to know and observe the patient as an individual). Standing alone, the opinion of a nonexamining physician cannot constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician. Morgan, 169 F.3d at 602.

The ALJ erred in rejecting Dr. Dimowo's opinion in favor of that of Dr. Gerber. The ALJ accepted the treating source diagnoses of CRPS. However, the ALJ did not cite SSR 03-02p, nor is his evaluation of the evidence consistent with the guidelines set forth in that Social Security Ruling. See Orn, 495 F.3d at 636 (noting that Social Security Rulings are binding on the ALJ, and remand may be warranted when an ALJ's decision that does not comport with a Social Security Ruling). For example, the ALJ rejected Dr. Dimowo's opinion and credited Dr. Gerber's conflicting opinion without first attempting to obtain

clarification or additional evidence from Dr. Dimowo regarding what the ALJ characterized as conflicts or inconsistencies in the evidence and an inadequate or ambiguous basis for Dr. Dimowo's opinion as to the date of onset of plaintiff's impairments.[2]  That approach is contrary to the Commissioner's guidelines stressing the particular importance of longitudinal treating source evidence in CRPS cases and directing adjudicators to take affirmative steps to develop the record with respect to such evidence before relying on nontreating source evidence.  See SSR 03-02p, 2003 WL 22399117, at *1-8.

The ALJ's reliance on Dr. Gerber's opinion is all the more troubling because Dr. Gerber did not acknowledge or accept the treating source diagnosis of CRPS, did not include it among plaintiff's severe medically determinable impairments, and did not demonstrate that he was familiar with this "unique clinical syndrome" and its "complicated diagnostic process." See SSR 03-02p, 2003 WL 22399117, at *1, *5. For example, when Dr. Gerber testified that he saw no "physical basis" for the degree of pain and other symptoms plaintiff reported, he gave no indication that he was aware that chronic excess pain complaints and "transitory" objective findings are typical in CRPS cases. See SSR 03-02p, 2003 WL 22399117, at *1-*5.  In contrast, the evidence from Dr. Dimowo provided a "longitudinal clinical record containing detailed medical observations, treatment, the individual's response to treatment, complications of treatment, and a detailed description of how the impairment limits the individual's ability to function and perform or sustain work activity over time."  SSR 03-02p, 2003 WL 22399117, at *5.  Therefore, Dr. Gerber's opinion is not substantial evidence supporting the ALJ's finding of nondisability.

**Examining source opinions regarding mental impairment**

Plaintiff also contends that the ALJ erred in partially rejecting the opinion of Dr. Brendel, a workers'

---

[2]  There was evidence in the record that could support an onset date earlier than plaintiff's first visit with Dr. Dimowo in June 2009, but the ALJ did not acknowledge the relevance of that evidence when he rejected Dr. Dimowo's opinion for "lack of supportability." [AR 35].  As the ALJ noted, for example, plaintiff underwent six surgeries on her upper extremities between December 2007 and October 2008 and was still recovering from the last surgery in December 2008. [See AR 33-34]. That history suggests that she may have been unable to work for at least twelve consecutive months before she started treatment with Dr. Dimowo. In addition, Dr. Chaves, a treating physician, concluded that plaintiff was temporarily totally disabled between February 2009 and June 2009, and Dr. Brown agreed that plaintiff was temporarily disabled in May 2009. [See AR 412-476]. The ALJ failed to acknowledge that those opinions partially corroborated Dr. Dimowo's opinion that plaintiff's impairments predated June 2009 and were disabling. [See AR 34-35].

compensation examining psychologist, in favor of the opinion of the Commissioner's consultative psychiatrist, Dr. Duong, and the nonexamining state agency physician, Dr. Balson. [JS 22-24; see AR 489-506, 509-540].

The ALJ rejected Dr. Brendel's March 2010 opinion that plaintiff had been temporarily totally disabled since October 2008 on the ground that it was inconsistent with plaintiff's own statements of record and with the findings and conclusions of Drs. Duong and Balson. The ALJ credited Dr. Brendel's opinion that plaintiff was "permanent and stationary"[3] as of March 2010 and had only slight to mild mental limitations on the ground that Dr. Brendel's opinion in that respect was "consistent with and supported by the weight of the other evidence." [AR 32].

Plaintiff argues that Dr. Duong's opinion is not substantial evidence supporting the ALJ's decision because Dr. Duong did not review medical records, and Dr. Brendel did. Both Dr. Brendel and Dr. Duong were one-time examining sources. The extent to which a medical source is "familiar with the other information in your case record" is relevant to assessing the weight of that source's medical opinion, but the opinion's supportability, consistency with the record, and other relevant factors may warrant giving weight to that opinion despite the absence of medical records for review. See 20 C.F.R. §§ 404.1527(c)(4),(c)(6), 416.927(c)(4),(c)(6) (factors considered in assessing the weight of medical opinions). Moreover, the nonexamining state agency physician, Dr. Balson, reviewed medical records as part of plaintiff's case file and, consistent with Dr. Duong, concluded that plaintiff did not have a severe medical impairment. [See AR 505-506]. In addition, both Dr. Duong and Dr. Balson applied social security disability standards in assessing plaintiff's impairments, while Dr. Brendel prepared his examination report for purposes of a California workers' compensation claim. See 20 C.F.R. §§ 404.1527(c)(c), 416.927(c)(6) (other factors tending to support a medical opinion include the source's "understanding of our disability

---

[3] "Permanent and stationary" is a term of art relevant to California workers' compensation law. Viramontes v. Astrue, 2010 WL 3212861, at *7 n.5 (E.D. Cal. Aug. 12, 2010). "A disability is considered 'permanent and stationary' for California workers' compensation purposes 'after the employee has reached maximum medical improvement or his or her condition has been stationary for a reasonable period of time.'" Viramontes, 2010 WL 3212861, at *7 n.5 (quoting Jenkins v. Astrue, 628 F. Supp. 2d 1140, 1145 n.2 (C.D. Cal. 2009)); see Gangwish v. Workers' Comp. App. Bd., 89 Cal. App. 4th 1284, 1290 n. 7 (2001) (citing Cal. Code Regs., tit. 8, § 10152)).

programs and their evidentiary requirements"). Accordingly, the ALJ did not err in partially rejecting Dr. Brendel's opinion.

**Credibility finding**

Plaintiff contends that the ALJ failed to articulate legally sufficient reasons for rejecting plaintiff's subjective symptom testimony. [JS 24-34].

Once a disability claimant produces evidence of an underlying physical or mental impairment that is reasonably likely to be the source of his or her subjective symptoms, the adjudicator is required to consider all subjective testimony as to the severity of the symptoms. Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991) (en banc); see also 20 C.F.R. §§ 404.1529(a), 416.929(a) (explaining how pain and other symptoms are evaluated). Although the ALJ may then disregard the subjective testimony he considers not credible, he must provide specific, convincing reasons for doing so. Tonapetyan, 242 F.3d at 1148; see also Moisa, 367 F.3d at 885 (stating that in the absence of evidence of malingering, an ALJ may not dismiss the subjective testimony of claimant without providing "clear and convincing reasons"). The ALJ's credibility findings "must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." Moisa, 367 F.3d at 885; see Light v. Social Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997) (enumerating factors that bear on the credibility of subjective complaints); Fair v. Bowen, 885 F.2d 597, 604 n.5 (9th Cir. 1989) (same). If the ALJ's assessment of the claimant's testimony is reasonable and is supported by substantial evidence, it is not the court's role to "second-guess" it. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

The ALJ's error in evaluating the medical evidence and failing to develop the record tainted his evaluation of the credibility of the subjective testimony of plaintiff and her husband because the ALJ's negative credibility findings depended in significant part on a lack of objective evidence in the record corroborating those findings. [See AR33-36]. The ALJ also cited Dr. Dimowo's treatment notes as evidence that plaintiff reported "usually get[ting] pain relief from the stellate ganglion blocks enabling her to perform activities of daily living." [AR 35]. That statement is true but incomplete. In his notes regarding plaintiff's nerve block injections, Dr. Dimowo consistently reported that plaintiff received "minimal pain relief" from oral medications, and that she "gets pain relief from [a stellate ganglion block] usually. This

makes the patient's life less miserable and the patient is able to perform activities of daily living and to do some domestic chores following the injection." [E.g., AR 770, 776, 785]. In his follow-up examination notes, Dr. Dimowo consistently reported that plaintiff said that the injections "helped her to be able to tolerate doing some minor activities around the house." [E.g., AR 771, 777, 786]. In his narrative assessment dated March 10, 2011, Dr. Dimowo said that the biweekly stellate ganglion blocks and multiple lumbar epidural steroid facet injections enabled plaintiff to do domestic chores, but that she was only able to withstand those activities "for about an hour at a time. Anything more than that tend[s] to escalate her symptoms . . . ." [AR 793]. Moreover, "daily activities may be grounds for an adverse credibility finding 'if a claimant is a substantial part of h[er] day engaged in pursuits involving the performance of physical functions that are transferable to a work setting,'" and "the ALJ must make 'specific findings relating to the daily activities' and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination." Orr, 495 F.3d at 639 (quoting Fair, 885 F.2d at 603; Burch, 400 F.3d at 681). This the ALJ did not do. In short, the ALJ did not articulate specific, clear, and convincing reasons supporting his negative credibility assessment.

**Remedy**

In general, the choice whether to reverse and remand for further administrative proceedings, or to reverse and simply award benefits, is within the discretion of the court. See Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir.) (holding that the district court's decision whether to remand for further proceedings or for payment of benefits is discretionary and is subject to review for abuse of discretion), cert. denied, 531 U.S. 1038 (2000). The Ninth Circuit has observed that "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Moisa v. Barnhart, 367 F.3d 882, 886 (9th Cir. 2004) (quoting INS v. Ventura, 537 U.S. 12, 16 (2002) (per curiam)).

A district court, however,

> should credit evidence that was rejected during the administrative process and remand for an immediate award of benefits if (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004) (citing Harman, 211 F.3d at 1178). The Harman test "does not obscure the more general rule that the decision whether to remand for further proceedings turns upon the likely utility of such proceedings." Harman, 211 F.3d at 1179; see Benecke, 379 F.3d at 593 (noting that a remand for further administrative proceedings is appropriate "if enhancement of the record would be useful").

Because of the complexity of evaluating a disability claim based on CRPS and the need for augmentation and clarification of the record regarding Dr. Dimowo's opinion, a remand for further administrative proceedings is the appropriate remedy in this case. On remand, the Commissioner shall direct the ALJ to conduct a supplemental hearing and takes any additional steps that are necessary to fully and fairly develop the record with respect to: (1) plaintiff's physical and mental impairments[4] and their effect on plaintiff's ability to work, including specifically CRPS; (2) the treating source opinions, including Dr. Dimowo's opinion; and (3) if appropriate, the date of onset of disability. The Commissioner also shall direct the ALJ to issue a new written hearing decision containing properly supported findings.

**Conclusion**

For the reasons stated above, the Commissioner's decision is not supported by substantial evidence and contains reversible legal error. Accordingly, the Commissioner's decision is **reversed, and the matter is remanded for further administrative proceedings consistent with this memorandum and order. IT IS SO ORDERED.**

March 14, 2014

_____
ANDREW J. WISTRICH
United States Magistrate Judge

---

[4] Although the ALJ did not err in evaluating the conflicting nontreating source opinions regarding plaintiff's mental impairment, the record on remand should be developed with respect to the possibility of "[p]sychological manifestations related to RSDS/CRPS," consistent with SSR 03-02p. See SSR 03-02p, 2003 WL 22399117, at *3, *6.